## A05A1913. JONES v. THE STATE.
(624 SE2d 291)

ELLINGTON, Judge.

An Athens-Clarke County jury found Kevin Jones guilty beyond a reasonable doubt of two counts of cruelty to a child, OCGA § 16-5-70; and aggravated battery, OCGA § 16-5-24. Following the grant of his motion for an out-of-time appeal, Jones appeals, challenging the sufficiency of the evidence and contending the trial court abused its discretion in accepting his decision to represent himself at trial, in admitting the victim's hearsay statements, in failing to grant sua sponte a mistrial based on improper prosecutorial argument, and in charging the jury on the definition of serious disfigurement. In addition, Jones contends the trial court erred in failing to merge the offenses for sentencing. For the reasons which follow, we vacate the judgment as to the two counts of cruelty to a child and affirm the judgment as to aggravated battery.

1. Jones contends the trial court abused its discretion in accepting his decision to represent himself at trial.

> Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. See *Faretta v. California,* 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII. An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation.

(Citations omitted.) *Thaxton v. State,* 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). To determine whether the defendant knowingly and intelligently waives the right to counsel, the trial court should make inquiry into the defendant's understanding of the specific dangers he

faces from proceeding pro se. *Humphries v. State*, 255 Ga. App. 349, 351 (1) (565 SE2d 558) (2002).[1]

> [A]lthough the trial court need not use any "magic words" to determine if a valid waiver was made, the State has the burden of showing from the record that the accused understood (1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter. Otherwise, there is no valid waiver. The trial judge must investigate as long and as thoroughly as the circumstances of the case demand to establish a valid waiver.

Id., citing *Hamilton v. State*, 233 Ga. App. 463, 466 (1) (b) (504 SE2d 236) (1998). We review the trial court's ruling that the State carried its burden of showing a valid waiver of the right to counsel for abuse of discretion. *Ledford v. State*, 247 Ga. App. 885, 887 (545 SE2d 396) (2001).

In this case, the record shows that, at the beginning of his arraignment on February 25, 2004, Jones announced his intention of representing himself. The trial court advised Jones of the serious nature of the charges against him and the potential punishment if he were convicted (twenty years imprisonment on each of four counts).[2] The trial court urged Jones to have legal representation and told Jones that an attorney would be able to advise him about possible defenses, contact potential witnesses and otherwise investigate the case, and provide legal expertise. As the trial date neared, the trial court conducted a hearing on July 13, 2004 regarding Jones' waiver of counsel. The trial court confirmed that Jones had read and understood the indictment. The trial court verified that Jones understood English and was not under the influence of any substance and confirmed that Jones understood he faced a possible sentence of 80 years imprisonment. The trial court advised Jones that he was entitled to be represented by an attorney and that he faced considerable dangers if he waived that right and instead represented himself. As examples of these dangers, the trial court in laymen's

---

[1] See also *Lamar v. State*, 278 Ga. 150, 153 (1) (c) (598 SE2d 488) (2004) (even though trial court failed to advise defendant of the dangers of self-representation, trial court committed reversible error by refusing to allow defendant to represent himself where defendant's comments demonstrated that his decision to waive his right to counsel was knowing and voluntary).

[2] The trial court directed a verdict as to a third indicted count of cruelty to a child.

terms listed the possibility that Jones would be found guilty and sentenced to the maximum punishment; the possibility that Jones lacked the knowledge to choose the best defense, to select a fair jury, to effectively cross-examine and impeach the State's witnesses, to choose whether to call defense witnesses and effectively examine them, to decide whether to testify in his own defense, and to frame arguments regarding the presumption of innocence; and the danger that Jones lacked the knowledge to assert appropriate evidentiary and procedural objections and otherwise preserve errors for appellate review. Jones responded to the court's questions and gave several reasons for preferring to represent himself. Although Jones's decision could be considered foolish and self-defeating, the trial court did not abuse its discretion in concluding that Jones's decision to waive one constitutional right in favor of asserting another was knowing and voluntary. *Lamar v. State*, 278 Ga. 150, 153 (1) (c) (598 SE2d 488) (2004); *Brown v. State*, 244 Ga. App. 206, 207-208 (1) (535 SE2d 281) (2000).

2. Jones contends that the circumstances of the victim's outcry statements provided insufficient indicia of reliability to be admitted under the child hearsay statute, OCGA § 24-3-16,[3] and therefore the trial court abused its discretion in admitting the statements. Specifically, Jones argues the four-year-old child demonstrated a general lack of credibility by his "hyperactive and unfocused demeanor" during the pretrial interviews; by inconsistencies in his explanations of how he received burn marks on his hand, arm, and buttocks; by giving the appearance of having been coached; and by his trial testimony which, Jones argues, showed "he lacked any ability to appreciate the importance of telling the truth." "We reverse a trial court's decision to admit evidence under the Child Hearsay Statute only if the court abused its discretion." (Footnote omitted.) *Putnam v. State*, 264 Ga. App. 810, 811 (4) (592 SE2d 462) (2003).

The cases interpreting OCGA § 24-3-16 have recognized a number of factors tending to affect the reliability of a child victim's out-of-court hearsay statements which a trial court may consider "to determine whether the child's statement shows inherent reliability and particularized guarantees of trustworthiness so that cross-

---

[3] A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

examination would be of marginal utility." (Citation and punctuation omitted.) *Ferreri v. State*, 267 Ga. App. 811, 813 (600 SE2d 793) (2004).

> The factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; . . . (10) the consistency between repeated out-of-court statements by the child[; (11)] consistency with known facts[; (12)] repeated questioning or counseling by several people during the interview period[;] and [(13)] whether the interviews were conducted by law enforcement personnel with the intention of gathering evidence against the accused.

(Citations and punctuation omitted.) Id. at 812-813. "These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness." (Citation and punctuation omitted.) Id. at 813.

In this case, the record shows that the child's statements were made spontaneously, in a calm and protective atmosphere, and in the absence of threats or promise of benefits. No drugs or alcohol were ever present. The child underwent only one forensic interview. The child's out-of-court statements were completely consistent as to the cause of the burns on the child's hand and arm and were consistent with his trial testimony and the physical and circumstantial evidence. Although some factors might have weighed against admitting the victim's out-of-court statements in this case, such as the victim's tender age and his inconsistent statements about how he received burn marks on his buttocks (which the trial court excluded), the trial court did not abuse its discretion in admitting the child's statements about the burns to his hand and arm. *Fiek v. State*, 266 Ga. App. 523,

524-525 (1) (597 SE2d 585) (2004); *Conley v. State*, 257 Ga. App. 563, 565 (2) (571 SE2d 554) (2002).

3. Jones contends the evidence was insufficient to convict him. In particular, Jones contends the evidence did not rule out the possibility that the child was burned accidentally or that the wounds on the child's hand and forearm resulted from a single contact with a hot implement, which would preclude conviction on more than one count of cruelty to children. In addition, Jones contends there was no evidence of serious disfigurement, as required for an aggravated battery conviction. On appeal, this Court reviews the evidence presented in the light most favorable to the prosecution, and the defendant no longer enjoys a presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Milton v. State*, 272 Ga. App. 908 (614 SE2d 140) (2005).

Viewed in the light most favorable to the prosecution, the record shows the following. In October 2003, Jones was the child's mother's boyfriend. He frequently ironed his clothes at the child's mother's residence. One day, after the child had been alone in his mother's apartment with Jones, Jones told the child's mother that the child was burned "because he came downstairs slinging [a] belt." The child told his grandmother, who cared for the child, that Jones burned him on the arm. The grandmother saw a burn mark near the child's hand. Jones told the child's grandmother that, if the child "would have minded his mama when she told him to stay in the other room, he never would've got burnt." During a visit to the grandmother's home on October 30, 2003, the family's case manager with the Department of Family and Children Services independently noticed the burns on the child's hand and forearm, and the child freely reported that Jones burned him with a hot iron because the child accidentally hit Jones while playing with a belt. The case manager described the wounds as appearing to be between one and two weeks old, scabbing over, "red and irritated around the edges . . . to the point where they were almost going to get puffy." The child demonstrated how Jones pressed the iron against his arm. The child testified at trial that Jones burned him with an iron because he (the child) was swinging his belt, and the child displayed the marks to the jury. Jones testified at trial and admitted ironing his clothes at the child's mother's apartment but denied burning the child and even denied knowing the child. The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that with the requisite criminal intent Jones burned the child on the hand and on the arm with an iron and seriously

disfigured his body. *Jones v. State*, 259 Ga. App. 698, 702 (1) (577 SE2d 878) (2003); *Harris v. State*, 223 Ga. App. 661 (478 SE2d 458) (1996). See Division 5, infra (definition of serious disfigurement). Accordingly, Jones' sufficiency argument lacks merit. See Division 6, infra (merger).

4. Jones contends the trial court abused its discretion in failing to grant a mistrial, sua sponte, based on improper prosecutorial argument. As Jones concedes, however, he failed to object at the time the allegedly inappropriate argument was made; as a result, he waived the right to raise this issue on appeal. *Carson v. State*, 259 Ga. App. 21, 23 (2), (3) (576 SE2d 12) (2002).

5. Jones contends the trial court abused its discretion in charging the jury on the definition of serious disfigurement. "Among other requirements, a jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (Citation and punctuation omitted.) *Morris v. State*, 263 Ga. App. 115, 117 (2) (587 SE2d 272) (2003). "There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence." (Citation omitted.) *Garrett v. State*, 271 Ga. App. 646, 650 (2) (610 SE2d 595) (2005).

In this case, the trial court charged the jury, in response to a request for a definition of serious disfigurement, "the injury must be more than a superficial wound such as a scrape, bruise, discoloration, or swelling." This definition was drawn from *Williams v. State*, 248 Ga. App. 316 (1) (546 SE2d 74) (2001), in which we deduced from the legislative scheme implicit in the statutory definitions of simple battery, battery, and aggravated battery, that "although 'seriously disfiguring' is not defined in OCGA § 16-5-24, it must require an injury more severe than the visible wounds used to illustrate the 'visible bodily harm' required to support a battery conviction," that is, "substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." (Punctuation omitted.) Id. at 318-319 (1), quoting OCGA § 16-5-23.1 (b). We concluded, therefore, that a finding of serious disfigurement requires proof that "the injury inflicted was more than a superficial wound, that is, a scrape, bruise, discoloration, or swelling." (Citations omitted.) *Williams v. State*, 248 Ga. App. at 319 (1). Considered as a whole, the trial court's definition embodied a correct, applicable, and complete statement of law.

6. Jones contends the trial court erred in failing to merge the offenses for sentencing. We agree.

Under OCGA § 16-1-6 (1), two offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other. As

with any factual merger question, the dispositive issue is whether the State "used up" its evidence in proving the crime: The actual evidence test, in effect, means that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1).

(Citation and punctuation omitted.) *Leaptrot v. State*, 272 Ga. App. 587, 600-601 (4) (612 SE2d 887) (2005).

In this case, the State presented evidence that Jones pressed a hot iron against the child's arm, causing serious disfigurement to the child's hand and arm. Although the child suffered two wounds, separated by a few inches, "the question is not whether medically distinguishable injuries were inflicted; the question is whether the State proved [three] completed crimes." (Citations omitted.) *Brown v. State*, 246 Ga. App. 60, 64 (1) (539 SE2d 545) (2000). In this case, there was no evidence before the jury that the wounds resulted from more than one act or transaction. Accordingly, the single act of appellant's pressing the hot iron to the child's skin, together with proof of serious disfigurement, was "used up" in proving Count 4, aggravated battery, and could not be used again as the predicate for a conviction and sentence on the two counts of cruelty to a child. See *Fitzpatrick v. State*, 268 Ga. 423 (1) (489 SE2d 840) (1997) (evidence used to prove that defendant committed an aggravated assault by cutting and stabbing the decedent more than twelve times was the same as that used to prove that he committed the malice murder and the crimes merged); *Rudisail v. State*, 265 Ga. App. 293, 295-296 (2) (593 SE2d 747) (2004) (where a single act was used to prove child molestation and aggravated child molestation, former crime was included in the latter as a matter of fact); *Brown v. State*, 246 Ga. App. at 64 (1) (assault with the intent to murder and aggravated battery were both based on a single act of firing a series of shots in quick succession at the victim and therefore merged as a matter of fact); *Kirkland v. State*, 206 Ga. App. 27 (2) (424 SE2d 638) (1992) (one transaction of DUI which deprived the victim of the use of two distinct members of his body). The judgment is vacated as to the convictions and sentence for Counts 1 and 2 of the indictment; the judgment is affirmed as to Count 4.

*Judgment affirmed in part and vacated in part. Smith, P. J., and Adams, J., concur.*

DECIDED DECEMBER 9, 2005 — 

*Daniel J. Cahill, Jr.*, for appellant.
Kevin M. Jones, *pro se.*
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.